IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| ELIN FARNELL, Ph.D., | : | |
| --- | --- | --- |
| | : | Case No. 2:18-CV-263 |
| Plaintiff, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | Magistrate Judge Deavers |
| KENYON COLLEGE, | : | |
| | : | |
| Defendant. | : | |

## OPINION & ORDER

This matter comes before the Court on Defendant's Motion to Dismiss. (ECF No. 3). For the reasons that follow, Defendant's Motion is **GRANTED**.

### I. BACKGROUND

Defendant Kenyon College is a private university located in Gambier, Ohio. Plaintiff Elin Farnell, Ph.D. was employed by Keyon College from 2010 to 2017. (ECF No. 1 at 1). On May 3, 2016, Dr. Farnell was denied tenure. (ECF No. 1 at 6). Kenyon's tenure review is based on three elements: "teaching excellence," which is the "*sine qua non* for retention and advancement"; "scholarly or artistic engagement"; and "collegiate citizenship." (ECF No. 1, Ex. 2 at ¶2.4.2; hereafter "Faculty Handbook.") The Faculty Handbook explains each of these three elements in detail, and outlines the procedure by which a faculty member can be evaluated for tenure (also called "appointment without limit") (Faculty Handbook at ¶2.4.6). The Handbook also outlines a grievance procedure, which can be used in the event of "a decision of the administration to terminate the faculty member's appointment, whether limited or unlimited, prior to the expiration of its term, or not to reappoint the faculty member to the faculty." (Handbook at ¶2.5).

1

Dr. Farnell was initially hired in 2010 and reappointed in 2013 after a successful pre-tenure review. (ECF No. 1, Ex. 4). In 2016, she was denied tenure. The math department concluded they had "enough reservations" that they could not, "in good conscience, recommend that the College tenure Assistant Professor Elin Farnell at this time." (ECF No. 3, Ex. 1 at 8). Using that departmental letter but also other documents and evaluations, the Tenure and Promotion Committee (TPC) recommended against tenure. (ECF No. 1, Ex. 6 at 11). The TPC called this a "difficult decision" but cited, among other things, the opinion of the math department, saying, "[it] is, however, unquestionable that her colleagues do not think that her teaching is up to the standards that Kenyon requires and that they also do not think that her scholarship meets those standards." (*Id*).

Dr. Farnell wrote a letter asking for a "formal grievance hearing." (ECF No. 1, Ex. 7 at 1). She specifically asked the grievance committee to review two elements of the tenure decision. First, she argued that "false, speculative, or misleading information" in her file resulted in "an improperly constituted dossier." (ECF No. 1, Ex. 7 at 1). She also argued that there had been "an unreasonable interpretation of provided documents in light of written guidelines, evaluations, and evidence." (*Id*.). The grievance committee convened and reviewed Dr. Farnell's appeal. (ECF No. 1, Ex. 8). In brief, the grievance committee concluded that because the teaching evaluation was such a large component of the tenure decision and would not be affected by the evidence Dr. Farnell presented to the grievance committee, "there is no material benefit to be gained from conducting a hearing" that would focus only on Dr. Farnell's arguments about her scholarship. (*Id.*).

Dr. Farnell brought this suit alleging breach of contract, breach of the duty of good faith and fair dealing, negligent misrepresentation, promissory estoppel, and intentional infliction of

emotional distress. (ECF No. 1). This Court has Diversity Jurisdiction over this case, which arises between citizens of different states and where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. Kenyon filed a Motion to Dismiss (ECF No. 3), arguing Dr. Farnell failed to state a claim upon which relief could be granted. Fed. R. Civ. P. 12(b)(6). Dr. Farnell filed a Response in Opposition (ECF No. 5) and Kenyon filed a Reply (ECF No. 7). This case is ripe for review.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court "must construe the complaint in the light most favorable to the plaintiff" and "accept all well-pled factual allegations as true[.]" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 790 (6th Cir. 2012). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.*

Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The allegations need not be detailed but must "give the defendant fair notice of what the claim is, and the grounds upon which it rests." *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). A complaint's factual allegations "must be enough to raise a right to relief above the

speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is not required to accept as true mere legal conclusions unsupported by factual allegations. *Id.* (citing *Twombly*, 550 U.S. at 555).

## III.   ANALYSIS

### A.  Breach of Contract

Dr. Farnell's first claim is for breach of contract. She argues, *inter alia*, that her scholarship was evaluated improperly; that the grievance committee should have held a hearing after she requested one; and that it was arbitrary and capricious for the faculty to reverse themselves, finding her teaching to be unsatisfactory in their second evaluation when her first evaluation, after three years at Kenyon, reported satisfactory progress. However, none of these states a claim upon which relief can be granted.

For a private college, the question of whether a plaintiff was given due process is essentially answered by whether the college properly followed its own procedures. *Pierre v. Univ of Dayton*, 143 F. Supp. 3d 703, 713 (S.D. Ohio 2015) (citing *Doe v. Amherst College*, 3:15-cv-30097 (D. Mass. Oct. 5, 2015)) ("the proper focus in analyzing whether a private university provided fundamental fairness is whether the University adhered to its misconduct procedure"). Courts assess whether the proceedings "fell within the range of reasonable expectations of one reading the relevant rules," which is an "objective reasonableness standard." *Id.* In general, "courts defer to the academic decisions of colleges and universities unless there has been such a substantial departure from accepted academic norms as to demonstrate that the

person or committee responsible did not actually exercise professional judgment." *Saha v. Ohio State Univ.*, 2011-Ohio-3824 at ¶36 (citing *Bleicher v. Univ. of Cincinnati College of Med.* (1992) 78 Ohio App. 3d 302) (internal quotation marks omitted). Courts are also "diligent not to intrude into faculty employment determinations and not to substitute their judgment with respect to qualifications of faculty members for…tenure." *Saha* at ¶37.

In this instance, this Court will not substitute its own judgment for that of the Kenyon faculty who reviewed Dr. Farnell. The letters on the record indicate that the faculty found this tenure decision to be a close and difficult one. (ECF No. 1, Ex. 6 at 11). But ultimately, Dr. Farnell's peers found that her teaching and scholarship were not at the level needed to offer her tenure. With respect to the teaching evaluation, both Dr. Farnell's pre-tenure review and tenure review reflect a thoughtful and thorough evaluation by her peers. As a result, this Court cannot conclude it was arbitrary and capricious even if those evaluations deemed her teaching satisfactory at the first review and unsatisfactory three years later.

With respect to the scholarship evaluation, Dr. Farnell argues that Kenyon admitted it made mistakes in this process, but the grievance committee concludes – and Kenyon argues in its brief – that even a re-evaluation of Dr. Farnell's scholarship would not affect the ultimate tenure conclusion because teaching is the *sine qua non* of the decision. (ECF No. 5 at 6; ECF No. 1, Ex. 8 at 3; ECF No. 3 at 6). Kenyon has discretion as to how it weights each of the three elements of the tenure review and how it evaluates Dr. Farnell's scholarship. This Court will not disturb its decision that even revisiting Dr. Farnell's scholarship would not affect the decision to deny tenure.

Finally, the grievance committee operated in accordance with its procedures. The Faculty Handbook provides that "the Panel will…be limited to determining whether the administration

5

complied with the applicable policies and procedures of the College…." (Faculty Handbook at ¶2.5.6.A). The grievance committee, after reviewing the evidence and meeting with the parties, is to "determine whether there is a prima facie case warranting a hearing." (*Id*. at ¶2.5.4). The report of the grievance committee specifically notes there was evidence to warrant a hearing on some elements of Dr. Farnell's appeal, but that such a hearing would not change their ultimate conclusion. (ECF No. 1, Ex. 8 at 4). This decision was not contrary to the procedures established by Kenyon and was not unreasonable. It was thus not a breach of the contract. Dr. Farnell's first count must be dismissed for failure to state a claim on which relief can be granted.

### B. Good Faith and Fair Dealing

Dr. Farnell next alleges Kenyon breached its duty of good faith and fair dealing. As to this allegation, Dr. Farnell's complaint does not state a claim for which relief can be granted. As a matter of Ohio law, the covenant of good faith and fair dealing "is part of a contract claim and does not stand alone as a separate cause of action from a breach of contract claim." *Interstate Gas Supply, Inc. v. Calex Corp.*, 2006-Ohio-638 at ¶98. Because this Court finds there was not a breach of contract, the claim for the breach of the implied covenant must also be dismissed. *See Lucarell v. Nationwide Mutual Ins. Co.,* 2018-Ohio-18 at ¶5 (clarifying that "a party to a contract does not breach the implied duty of good faith and fair dealing…unless a specific obligation imposed by the contract is not met."). Because there is no claim for which relief can be granted, Dr. Farnell's second count must be dismissed.

### C. Negligent Misrepresentation

Dr. Farnell next brings a claim for negligent misrepresentation. This claim also fails to meet the pleading standard. In Ohio, "courts have demonstrated a willingness to extend liability for negligent misrepresentation only in special cases." *Bellios v. Victor Balata Belting Co.,* 724

F.Supp. 514, 519 (S.D. Ohio 1989). Ohio courts have tended to limit liability to persons who are in the "business of supplying information to others" such as "attorneys, surveyors, abstractors of title and banks dealing with no-depositors' checks." *Middlefield Banking Co. v. Deeb*, 2012-Ohio-3191, ¶35 (internal quotations omitted). As a threshold matter, Dr. Farnell does not argue (as she could not) that she held one of these carefully delineated roles. Other than these specifically created exceptions, no Ohio court "has held the tort of negligent misrepresentation applicable to the employer-employee relationship." *Vickers v. Wren Industries, Inc.,* 2005-Ohio-3656, at ¶47. *See also Zieglar v. Findlay Indus., Inc.*, 464 F.Supp. 733, 738 (S.D. Ohio 2006). Because Dr. Farnell and her employer were not in the business of providing information to others, she is not part of the small exception under Ohio law. As a result, she cannot sustain a claim for negligent misrepresentation in the context of an employment relationship.

Dr. Farnell's memorandum contra says "[a] number of Ohio courts have entertained claims for negligent or fraudulent misrepresentation." (ECF No. 5 at 17). But she then correctly recites the elements of a claim for negligent misrepresentation, which was the claim also present on the face of her well-pleaded complaint. (ECF No. 1 at 16-17). In Ohio, fraudulent misrepresentation and negligent misrepresentation do not have the same elements. *Compare Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St. 3d. 54, 55 (reciting the elements of fraudulent misrepresentation) *with C&R, Inc. v. Liberty Mut. Fire Ins. Co.,* 2008-Ohio-947 at ¶19 (reciting the elements of negligent misrepresentation). Because Dr. Farnell's well-pleaded complaint and memorandum contra both indicate she is claiming negligent misrepresentation *and not* fraudulent misrepresentation, this Court will not address any fraudulent misrepresentation claim.

With only very limited exceptions, Ohio does not recognize claims for negligent misrepresentation in the context of the employment relationship. As a result, this count must be dismissed.

### D. Promissory Estoppel

Dr. Farnell's fourth claim is for promissory estoppel. In Ohio, promissory estoppel is not available when the relationship between the parties was governed by a contract. *See Gibson Real Estate Mgmt., Ltd v. Ohio Dep't of Admin. Servs.,* 2006-Ohio-620, ¶13 (noting that "promissory estoppel is not available as a remedy where the legal relationship between the parties is governed by an enforceable contract"). Generally, there cannot be "an express agreement and an implied contract for the same thing existing at the same time." *Hughes v. Oberholtzer,* 162 Ohio St. 330 (1954). As a result, Dr. Farnell has failed to state a claim for which relief can be granted, and this count must also be dismissed.

Dr. Farnell indicates she was pleading "in the alternative." (ECF No. 5 at 18). Assuming *arguendo* there was no contract to govern the parties' interaction, there remains no viable claim for promissory estoppel. Ohio has adopted the definition from the Restatement of the Law, Contracts 2d (1973), §90, which states, "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *McCroskey v. State*, 8 Ohio St. 3d 29, 30 (1983) (quoting the Restatement). Here, Dr. Farnell's claim fails because there was no such promise. Dr. Farnell argues that she relied on her three-year review in which her colleagues indicated their approval for her continued focus on pedagogical scholarship. But Dr. Farnell was never promised tenure in exchange for following any particular path with her scholarship. Rather, she was always on notice about the three

elements of her tenure review as outlined in the Faculty Handbook. As a result, assuming *arguendo* there was no contract between the parties, Dr. Farnell does not state a claim upon which relief can be granted.

### E. Intentional Infliction of Emotional Distress

Dr. Farnell's final claim is for the intentional infliction of emotional distress (IIED). An IIED claim has four elements: that the defendant intended to cause emotional distress or knew or should have known that her actions would cause serious emotional distress; that the defendant's conduct was so extreme and outrageous as to surpass all possible bounds of decency and is considered utterly intolerable in society; that the defendant's actions were the proximate cause of the injury; that the harm suffered by the plaintiff are serious and of a nature no reasonable person could be expected to endure. *Valente v. Univ. of Dayton*, 689 F. Supp. 2d 910, 925-26 (S.D. Ohio 2010), *aff'd*, 438 F. App'x 381 (6th Cir. 2011). The Ohio Supreme Court has adopted the Restatement of Torts (2d), which explains IIED as follows:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

*Valente,* 689 F. Supp. 2d at 925.

The allegations Dr. Farnell makes, taken as true, do not rise to the level of an IIED claim. Nothing in Kenyon's behavior would make a reasonable observer "exclaim 'Outrageous!'" Kenyon's behavior is not of the sort we seek to banish from civilized society. Although Dr. Farnell cites to members of the Kenyon community expressing their contrition for the way her

9

tenure process played out, the College's conduct did not "go beyond all possible bounds of decency." And even taking Dr. Farnell's allegations as true, nothing in the record suggests that Kenyon's behavior caused Dr. Farnell mental anguish of the sort no reasonable person could be expected to endure. As a result, Dr. Farnell's claim does not state grounds on which relief can be granted and must be dismissed.

## IV. CONCLUSION

Although there were evident miscommunications, Kenyon complied with its internal procedures and gave Dr. Farnell adequate process during her tenure review. As a result, her complaint fails to state a claim upon which relief can be granted. Defendant Kenyon's Motion to Dismiss is **GRANTED**.  This case is hereby DISMISSED.

**IT IS SO ORDERED.**


        **s/ Algenon L. Marbley**
        **ALGENON L. MARBLEY**
        **UNITED STATES DISTRICT JUDGE**

**DATED:  March 4, 2019**